## Axtell *versus* Caldwell.

1. It is not error for a judge in charging the jury casually to mention a principle of law not strictly applicable to the case but having reference to the subject on which he' was then charging.

2. A bond with surety was given by a husband separated from his wife, conditioned for the delivery of certain cattle, household and kitchen furniture, " and also the clothing of the wife to be given up to her, or her father, at any time when called on," the property mentioned " to be kept in safe and good keeping" for the benefit of the wife or her children for the period of two months from the date of the bond:

In a suit on the bond by the father of the wife, the obligee, the Court charged that a demand of the property before suit was necessary, but that a refusal to deliver up the property would render a demand unnecessary:

*Held,* that though there were no evidence of refusal to deliver the property, there was not error in the instruction—the Court did not say that there was evidence of refusal, and he was not bound to say the contrary without being requested.

3. Offers of reconciliation made by the husband to the wife apparently reasonable and fair were not equivalent to an actual reconciliation, there being no evidence that the offers were declined merely for the fraudulent purpose of proceeding upon the bond.

4. There being no proof of the actual delivery of the property, and none that the husband was possessed of it at his death, it was not to be presumed merely from his death that the property had descended to and been received by his wife after his death.

ERROR to the Common Pleas of *Mercer county*.

This was an action of debt to April Term, 1851, by John Caldwell against Thomas and Joseph Axtell, on a bond dated 11th October, 1844, executed by them, under the penalty of $500, for the delivery of certain cattle, sheep, hogs, household and kitchen furniture, "and also the *clothing* of the wife of Thomas Axtell, to be given up to her or her father, at any time when called on;" the above-mentioned property "to be kept in safe and good keeping for the benefit of said Ann Axtell, or her children, for the period of two months from this date;" and it was further conditioned, that unless Thomas Axtell and his wife should arrange the present difficulty, unite as husband and wife, or Thomas Axtell come and arrange the matter to the satisfaction of the said John Caldwell, the bond to be in force.

Service was made on Joseph Axtell only, who dying, the executor of his will was substituted.

On part of the plaintiff, a witness, A. McCleery, after testifying as to the value of some of the property, said, " I saw Joseph; considerable conversation occurred. He said he could not get the property so as to deliver it; Thomas kept it so as he could not deliver it." On cross-examination he said, " Thomas seemed to be obstinate, and he could never get him to come and give up the property;" he said, " Thomas had been there to negotiate, but

[Axtell v. Caldwell.]

had not succeeded." Another witness testified that on one occasion Thomas struck his wife.

On the part of the *defendant* testimony was given of a proposition by Thomas to his wife to arrange the disagreement between them, and that she objected to living with him, but assigned no reason.

McCALMONT, P. J., in his charge, observed "that the property was to be given up when called on, after the two months would expire." The plaintiff's counsel contends that there was no necessity for *a demand* after two months expired; but he observed, "we instruct you that it was necessary to make a demand for the property after the two months had expired, and before the bringing of the suit. A refusal, however, to deliver up the property, would waive the 'necessity' of a formal demand."

He further observed, that it was argued that if Thomas Axtell did all he could to arrange the matter, the refusal of his wife, or of the plaintiff, would have been so unreasonable that the presumption of law would be against them, and the plaintiff should not recover. He observed, "We are not of this opinion. If the wife refused to unite with her husband upon this offer, she may have had good reasons therefor." He referred to the jury to determine whether the difficulty was arranged. If so, the bond could not be enforced.

He further charged, that there was no presumption of law that the property was in the possession of Thomas Axtell at his death, and went to his widow and children. If such were the case, it should have appeared.

January 18, 1854. Verdict for plaintiff for $246.40.

Error was asssigned to the charge that "a refusal to deliver up the property would waive the necessity of a formal demand;" and to the instruction on the subject of an arrangement of the difficulties; and as to the property.

*Stephenson*, for plaintiff in error.—There was no evidence of demand and refusal. A submission to the jury of an alleged fact of which there was no evidence is error: 8 *Harris* 123, Sartwell v. Wilcox; 6 *Id.* 351.

The plaintiff should have been satisfied with a reasonable offer of arrangement.

3. As there was no evidence that the husband parted with the property, the presumption was that he had it at his death, and that it was received by the wife, especially as most of it was exempt from execution, and considered in connexion with the delay for seven years in instituting suit.

*Stewart*, contrà.—The testimony of McCleery was referred to
VOL. XII.—12

as evidence from which a refusal to deliver the property might be inferred.   He observed, that McCleery called on Joseph Axtell, *at the request of John Caldwell,* to effect an arrangement of the claim.   The statement testified to by this witness was that of Joseph Axtell, that *Thomas* Axtell had substantially refused to deliver up the property.   The clothing was to be given up when called for, and it was delivered; but the other property was to be kept for two months.   The property was described, and, unless by special agreement, no demand was necessary: 2 *Pa. Rep.* 63, Roberts *v.* Beatty.

There was no proof that Thomas Axtell was in possession of the property at his death.   He was alive when the suit was instituted.

The opinion of the Court was delivered, December 18, by

BLACK, C. J.—Thomas Axtell married a daughter of Caldwell, the plaintiff, quarrelled with and separated from her.   Afterwards he gave a bond to the plaintiff, with his brother as surety, that he would either deliver up certain property for the use of his wife and children when called on, or else arrange the difficulty with his wife in two months.   His wife and he were never reconciled, and he died several years afterwards without delivering the goods. This action was brought against the surety in the bond.

The Court charged, in substance, 1. That the action could not be sustained without a demand, but a refusal to deliver the property would make a demand unnecessary.   2. That certain offers made within the two months by the husband to the wife, though apparently reasonable and fair, were not equivalent to an actual reconciliation.   3. That it could not be presumed from the death of Thomas Axtell without delivering the property that his wife and children got the property after his death.   Was there any error in all this?

1. It is not denied that the first proposition is a true and correct expression of the law in the abstract.   But it is contended that the Court committed an error fatal to the judgment in speaking of a refusal at all, when there was no evidence in the case to show that there had been a refusal.   When jurors are told that a given question is to be determined by them as a matter of fact, according to their view of the evidence, this, in the parlance of our law (or at least of our lawyers), is called submitting the fact to the jury.   If it appear from the record, when it comes to be reviewed, that there was no evidence, direct or presumptive, of the existence of such fact, the submission is error; because it is tantamount to a charge that there is some evidence of the fact upon which, in the opinion of the Court, the jury may find it to be proved.   Conceding that the evidence in this case is a part of the record; conceding that it is all before us; and conceding that

[Axtell *v.* Caldwell.]

no part of it has any bearing, direct or indirect, upon the point in controversy, does the language of the Court *submit* the question of refusal or no refusal to the decision of the jury ? A legal principle is stated. It has nothing to do with the case, to be sure; but the jury know that as well as the Court. The judge said nothing which implied an opinion that there was evidence, and he was *not* bound to say the contrary without being requested. It must be confessed, that it is very difficult to say, from the cases in our books, what is error and what not. There is no question more important; none which ought to be more clearly defined or better understood ; and yet there is none on which the professional mind is left in a more painful state of confusion. That some fact has been left to the jury without sufficient evidence, is one of the objections made here to more than half the judgments we review. Twenty years ago Judge HUSTON called this the stereotype exception. It is sustained about once in a hundred times, but it always gives counsel an opportunity of discussing the facts before us much in the manner it might be done before a jury. It has, however, not at any time been held that we can reverse because the judge casually mentioned a rule of law not strictly applicable to the case, but suggested to his mind by its reference to a kindred subject. When he is charging on a case of libel there is nothing to prevent him from mentioning the law of unwritten slander. Much less is it error to say in such a case as this, that, without either a demand or a refusal, there can be no recovery; for that is true in law, and it is in favor of the very party who complains of it. That there was no evidence of either is exactly what makes it count to his advantage. It is certainly best and most conducive to the ends of justice, that both judges and counsellors should confine themselves strictly to the subject before them, and say neither more nor less than just what is required by the occasion. But when, on this side of the millennium, can we expect to see judges or advocates, in this Court or elsewhere, who will observe that rule?

2. The second error cannot be sustained. The condition of the bond was, that Thomas Axtell and his wife should arrange the difficulty and live together. Assuming that his proposals were made in good faith, and reasonable in themselves, we cannot deny the truth of the remark made by the Court below, that the wife may have had good cause for declining them. The Court were not asked to say what the law would be if the offers were declined merely for the fraudulent purpose of fixing the liability of the obligors in the bond.

3. Thomas Axtell died some years after this transaction. There is not a spark of evidence to show that his wife or children received anything from his estate, or that he had the property mentioned in the bond, or any other property, at the time of his

[Axtell *v.* Caldwell.]

decease.   The Court said, that if the widow got the goods, it was an answer to the action, but coupled this with the very proper instruction, that the fact could not be presumed without evidence.

Judgment affirmed.